UTAH ASSOCIATION OF CREDIT MEN v. McCONNELL

No. 3018.   Decided September 10, 1917.   Rehearing denied October 6, 1917.   (167 Pac. 817.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—DIRECTORY STATUTES, Comp. Laws 1907, sections 84-104, with reference to assignment for the benefit of creditors, is merely directory, and not to the effect that an insolvent debtor may not make a valid assignment in conformity with the rules of the common law.   (Page 539.)

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS—COMMON-LAW ASSIGNMENT—COLLATERAL ATTACK.   An assignment under which all creditors participated and were to receive their just benefits without compliance with the statute with reference to assignments was valid, and more especially one that could not be questioned by defendant in a suit by the assignee to recover damages for the breach of a contract to purchase the property.   (Page 542.)

3. VENDOR AND PURCHASER—SALE—EVIDENCE—SUFFICIENCY.   In an action for breach of contract by plaintiff assignee for the benefit of creditors against defendant purchaser of the property, evidence held sufficient to show a valid contract of sale between plaintiff and defendant by telegrams and letters between the parties.   (Page 542.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by the Utah Association of Credit Men against R. N. McConnell.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED with costs to plaintiff.

*Skeen Bros.* for appellant.

*Thos. O. Sheckell* and *Stephens & Smith* for respondent.

APPELLANT'S POINTS

The rule of law is well established that an offer to sell imposes no obligation on either party until accepted according to its terms, and that a proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of· the offer and ends the negotiations, unless the offer is renewed or the proposed modification accepted, and the offer which has been rejected cannot be revived by a tender of an acceptance of it. *(Minn. & St. Paul R. R. Co.* v. *Columbus Rolling Mill Co.,* 119 U. S. 149, 30 L. Ed. 376.) And the acceptance must correspond to the offer on every point, leaving nothing open for future negotiations. (1 Page on Contracts, 74, paragraph 45.) If the acceptance attempted leaves open the adjustment of the price, or the time of delivery or a payment, it is of no effect. (1 Page on Contracts, 75; *Sault Ste. etc., Co.* v. *Simmons,* 41 Fed. 835; *Decker* v. *Gwinn,* 95 Ga. 518, 20 S. E. 240; *Shepherd* v. *Carpenter,* 54 Minn. 153, 55 N. W. 906.)

Much controversy has been had as to whether or not where there is a statute as in this state on assignments for the benefit of creditors, it is exclusive in its effect, and abolishes the so-called "Common Law Assignment for the Benefit of Creditors." In the light of statutory enactments, the title on "Assignment for the benefit of creditors" must be held to "establish the law of the state," and by implication to establish that assignment for the benefit of creditors can be made in no other way. In construing section 2489, the Supreme Court of this state has said that that section clearly means that the common law is abrogated in so far as it is repugnant to the statutes of this state. In *Rio Grande Western Railway Company* v. *Salt Lake Investment Company,* 35 Utah, 528 (1909), the court decided, among other things, that title by adverse possession could be secured in Utah only pursuant to the provisions of the statutes. Yet it will appear that the sections on adverse possession, in title 88, Chap. 3, are affirmative in language. The court referring to section 2489, supra, said:

"This, by implication at least, excludes the common law from all subjects that are regulated by statute." And later

in the opinion: "Hence, in our judgment, the statutory method is the only one by which title by adverse possession can be acquired in this state."

In the case of *Garr* v. *Davidson et al.*, 25 Utah, 335, our Supreme Court, speaking through Mr. Justice Morse, said, on page 336, respecting the probate code of this state:

"The probate code  *  *  *  provides a comprehensive and specific method of procedure in the matter of the administration and distribution of estates and the determination of heirship and the right of succession."

and it was held that such method was exclusive.

Assuming that the assignment was sufficiently valid to pass title, the provisions of the assignment statute are mandatory, requiring inventory and bond as a condition precedent to the assignee entering upon his duties, and until the assignee has filed the necessary inventory and valuation and given bond, as required by the statutes, he has no power to dispose of the estate by sale, or otherwise. (*Bryant* v. *Langford,* 80 Cal. 542, 22 Pac. 219; *Brennan* v. *Willson* 71 N. Y. 502; *Von Hein* v. *Elkins,* 8 Hun. 516; *McCuaig* v. *City Sav. Bank* [Mich.], 69 N. W. 500; *Rice* v. *Frayser,* 24 Fed. 460; *Strong* v. *Brown,* 43 N. W. [Minn.] 67; *Ramsay* v. *Hersker,* [Pa.] 26 Atl. 433.) A purchaser at an assignee's sale has a right to obtain a clear title, and if the title offered to the defendant by this plaintiff was questionable, or open to attack, he could not be compelled to take it. (5 Corpus Juris, 1223, and cases cited.)

### RESPONDENT'S POINTS

It is a well settled principle of law that a contract may be made by correspondence or by telegram, the question being whether it was intended that the letters or telegrams between the parties should constitute the agreement or simply be deemed negotiations between them. In this case, the contract was an executory contract. There was an offer and an acceptance of the offer, a meeting of minds between the parties, and where the agreement is complete by acceptance, a new proposal to modify it by either party has no effect on the agreement unless it is accepted and thus becomes a new substituted agreement. (*Hubbell* v. *Palmer,* 76 Mich. 441;

*McLean* v. *Pastime Gymnasium,* 64 Mo. App. 55.) The court may acquaint themselves with the persons and the circumstances that are the subject of the statements and the written agreements, and are entitled to place themselves in the same situation as the parties who make the contract so as to view the circumstances as they view them and so as to judge the meaning of the words and the correct application of the language to the things described. (*Wood* v. *Kelsey,* 90 Ark. 272.)

An assignment, voidable as against a creditor, may be good as between the parties and all other persons except the creditors. While, with certain qualifications, it is a rule that creditors may attack the validity of an assignment, the right is denied to an entire stranger. (*James* v. *McPhee,* 9 Colo. 486; *Butler* v. *Wendell,* 57 Mich. 62.) It is a further principle of law that an assignment, valid on its face, cannot be attacked collaterally. (*McCandless* v. *Haden,* 98 Iowa, 321; *Staples* v. *Schulenburg,* 62 Minn. 158; *Second National Bank* v. *Schranck,* 43 Minn. 38; *McCourt* v. *Bond,* 64 Wis. 596.) Where a deed of assignment is made to which the creditors do not become parties, the powers conferred upon the trustee may be revoked and the trust destroyed by an arrangement between the grantor and the trustee to that effect, but to be valid, it must be done before the creditors under the deed of trust have assented to its conditions, or have done anything entitling them to rely on the funds so created for the payment of their claims. (*Gibson* v. *Reese,* 50 Ill. 383.)

CORFMAN, J.

Plaintiff, as assignor, brought an action in the district court of Salt Lake County for damages alleged to have been sustained by reason of the defendant's refusal to receive and pay for a stock of merchandise and other personal property under a contract of sale entered into between the plaintiff and the defendant. Briefly stated, it is alleged in the complaint that on April 25, 1912, the Regulator Company, a corporation, was engaged in business at Richfield, Utah, and on said day executed and delivered to the plaintiff a voluntary

assignment for the benefit of its creditors of a stock of merchandise, fixtures, and other personal property, which assignment was accepted by the plaintiff; that thereafter said property was sold under contract to the defendant for $8,500, and the price reduced to $8,450 by reason of the loss of a certain horse valued by agreement of the parties at $50; that the defendant refused to accept the property and pay the purchase price of the same, to the damage of the plaintiff in the sum of $1,000, for which plaintiff prayed judgment, including interest and costs of suit.

A general and special demurrer to the complaint was filed by the defendant, which was overruled by the court.

The answer, briefly stated, admits the assignment by the Regulator Company to plaintiff; denies, generally, all the other allegations of the complaint except defendant's refusal to accept the property and pay the purchase price thereof, which defendant admits; and, as an affirmative defense, affirmatively alleges that the plaintiff did not file with the county clerk of Sevier County, where the property was located, an inventory and valuation of the assigned property, nor give bond for the use of the creditors of the Regulator Company as required by law.

Trial was had to the court without a jury, resulting in judgment for the plaintiff. Defendant appeals.

The evidence produced at the trial was largely documentary, and shows that the contract upon which plaintiff bases its action is made up chiefly of a series of letters and telegrams concerning the purchasing and taking over by the defendant of a stock of merchandise, store fixtures, etc., assigned by the Regulator Company to plaintiff for the benefit of its creditors. The testimony further shows that the Regulator Company had made a previous assignment of the same property to one C. W. Coons, but, by an arrangement of the Regulator Company and its creditors, this previous assignment was vacated and set aside. The assignment made by the Regulator Company to plaintiff was in writing, but not acknowledged; nor was it filed in the office of the clerk of the district court of Sevier County, the county in which the

property was situated; nor was any bond given by the plaintiff, as assignee, for the use of the creditors of the Regulator Company. The testimony also shows that under the assignment to it the plaintiff proceeded to send out notices to all the creditors of the Regulator Company for them to file their claims with the plaintiff, and also notice of the property or assets on hand to be sold and disposed of under the assignment.

Responding to these notices, the communications herein set forth were had between the plaintiff and the defendant concerning the sale of the assets of the Regulator Company, constituting, as claimed by plaintiff, the contract of sale entered into between the plaintiff and defendant upon which the plaintiff's action was predicated:

"Los Angeles, Cal., 5/7/12.
"The Utah Ass'n of Credit Men, Salt Lake City, Utah.— Gentlemen: In re Regulator Co., Richfield, Utah. I represent Utz & Dunn for $873.

"Please send me a list of the creditors with addresses and amount due respectively. Also what the assets consist of under your inventory and what day the assets will be sold in bulk. Please give me one week to ten days notice as I will be present or wish to be when stock is sold. I await your earliest reply for which I will thank you.

"Yours truly, R. N. McConnell."

"Salt Lake City, Utah, May 9, 1912.
"Mr. R. N. McConnell, Attorney at Law, Trust & Savings Bldg., Los Angeles, Cal.—Dear Sir: Answering your letter of May 7th, we wired you this morning as follows:

" 'Are advertising stock of Regulator for sale at our office, Saturday, May eighteenth, at two p. m.'

"We inclose herewith copy of a circular letter sent to all creditors of this estate, also notice of sale, as therein referred to.

"The liabilities of this corporation are distributed among 76 creditors, and unless the list of same in detail is wanted by you for some specific purpose, we shall wait until you

come to Salt Lake City before furnishing same, on account of being so busy in our office with much extra work.

"Yours truly,

"The Utah Association of Credit Men,

"By ——————."

The testimony shows that, after these communications were had between the plaintiff and the defendant, the defendant appeared at the office of the plaintiff in Salt Lake City on May 18, 1912, the time and place fixed for the sale of the assets of the Regulator Company. The defendant was then shown an inventory of the property. Bids were made for the property, the plaintiff bidding, among others, but all bids were then rejected by the plaintiff, including the bid of the defendant on account of same being too low in price. The plaintiff, after the bidding, offered to accept $8,500 for the property, and gave the defendant some time to consider whether he would accept plaintiff's offer at that price. The defendant then departed for Oklahoma, and thereafter the following communications were had between the plaintiff and the defendant concerning the purchase of the property:

"Oklahoma City, Okla., May 23, 1912.

"Arthur Parsons, c/o Z. C. M. I., Salt Lake City, Utah: Meet you part way on our difference, will give eight thousand dollars Regulator stock fixtures and lease time you have paid. Wire answer. Will then check over inventory to know substantially correct. Pay six now, other two when you deliver stock. Answer.

"R. N. McConnell."

"May 24th, 1912.

"R. N. McConnell, Oklahoma City, Oklahoma: Answering night letter to Mr. Parsons, committee sees no present reason to recede from price previously fixed. If you want the stock at our price, better accept quickly as prospects are good for sale at our price to other parties.

"Utah Association of Credit Men."

"Oklahoma City, Okla., May 24, 1912.

"Utah Association of Credit Men, Care of George E. Forrester, Salt Lake Cty, Utah: I accept option given me up to

today eight thousand five hundred dollars on Regulator Company proposition made me last Sunday. Wire confirmation and I will pay money holding small part until you have custodian deliver and show everything right and safe as per your statement. I give your price rather than have bankruptcy controversy.                                         R. N. McConnell."

"May 25, 1912.
"R. N. McConnell, Oklahoma City, Oklahoma: We accept your offer of eight thousand five hundred dollars for stock, fixtures and lease of Regulator Company. Advise when deal can be completed. The horse which with wagon and harness inventoried one hundred dollars accidentally killed. Will allow credit fifty dollars for same.

"Utah Association of Credit Men."

"Oklahoma City, Okla., June 3, 1912.
"Utah Ass'n of Credit Men, Salt Lake City, Utah: Manager Wahl closing inventory stock. Sale Porter today, will leave Wednesday afternoon for Salt Lake.

"R. N. McConnell."

"Oklahoma City, Okla., June 6, 1912.
"The Utah Association of Credit Men, Salt Lake City, Utah—Gentlemen: In re Regulator Stock, Richfield, Utah. My manager, Mr. F. H. Wahl, left here yesterday for your city and will arrive there Sunday, and I now beg to ask that you be at your office at 5:00 o'clock Sunday afternoon so that you can have a 15 minute talk with him and if you deem it best, send some one from your office with him Monday down to Richfield. He will look over the stock and receive the inventory and keys thereto and if all is as was represented, he will turn over to you check for $8,450.00  The purchase price being $8,500.00 less $50.00 deduction for the horse. He arrived here late yesterday and left late last night and therefore had only my personal check. I told him when he found everything satisfactory, and was given possession of the property, that he could wire me to that effect and I would then have my bank wire the bank at Richfield, that my check for that amount would be duly paid.

"I trust that everything is in proper shape and that the deal will be closed agreeably to yourself and Mr. Wahl.

"The store will not be opened for at least 5 days and if you do not care to incur the telegraphic expense of possible $2.00 to know that the check is good, you can tell Mr. Wahl that he need not wire and ask the bank to wire that the check is good as the check will clear before the store is opened, however, if you must have telegraphic advice on the check, I have no objection as I told Mr. Wahl to tell you that before delivery, this would be done if you so requested.

"Please let me know what day the estate will be closed and the funds distributed.

"Furthermore, I believe you ought to waive any charge on my claim as we have given you an extra fine figure for the stock. Please send me one of your blank forms of assignment and I will file the claim and trust you can favor me with waiver of charges, owing to the fact that we have been subjected to very heavy expenditure in looking after the matter and aided you largely in bringing a big price for the stock of goods. I await your reply.

"Yours truly,          R. N. McConnell."

The testimony further shows that Mr. Wahl came to Salt Lake City as announced by defendant that he would do, made a visit to Richfield, and the defendant then refused to accept the stock or pay the plaintiff for the same, and that thereupon the plaintiff sold and disposed of the property in question to third parties for the sum of $7,500.

The errors assigned by defendant are numerous. Primarily, however, they present but two questions for consideration by this court, namely: (a) May the assignment made by the Regulator Company of its assets to the plaintiff for the benefit of creditors be questioned by the defendant in this action? (b) Was there a valid contract of sale entered into between the plaintiff and the defendant?

(1) It is contended by defendant's counsel with much earnestness that the Utah statute relative to assignments for benefit of creditors is exclusive in effect; that it establishes the only course to be followed in making assign-

ments for the benefit of creditors, and that a valid assignment cannot be made otherwise by a debtor than by a full compliance with its express provisions.

Comp. Laws 1907, tit. 5, section 84 (the statute in question), among other things provides:

"An insolvent debtor may, in good faith, execute an assignment of property to one or more assignees, in trust for the benefit of creditors, in conformity with the provisions · of this title."

Section 88 provides:

"Every such assignment shall be by an instrument in writing, * * * executed and acknowledged in the manner prescribed for the execution and acknowledgment of deeds, and recorded in the office of the recorder of the county where the property assigned is located. The assignor shall annex to such instrument an inventory, under oath, * * * according to the best of his knowledge. * * * As soon as such instrument is recorded, it shall be filed, with the inventory and list of creditors, in the office of the clerk of the district court of the county in which the property so assigned is located, as shall also all subsequent papers connected with such proceedings."

Other provisions of the statute provide for the giving of a bond for the use of creditors, the giving of notice of the assignment by publication in a newspaper, the mailing thereof to creditors, and that the assignee shall be under the supervision of the court or judge.

Counsel for the defendant in their brief have cited numerous decisions construing the statutes of several states, notably New York, Kansas, Arkansas, New Jersey, Oregon, Texas, and Iowa, holding that provisions of their statutes somewhat similar to our own are mandatory, and unless the formalities of the statutes are complied with an assignment is invalid. We have carefully reviewed all these authorities, and we find none applicable to the case at bar. In many of the cases cited by counsel the validity of the assignment was questioned by the creditors of the assignor, or by debtors not recognized under the assignment. In others the assignment

was directly attacked by creditors under insolvency statutes, or under statutes expressly providing that the assignment shall be invalid unless the provisions of the statutes are observed and complied with. It will be readily seen that the Utah statutes in question are merely directory that ''an insolvent debtor may  *  *  *  execute an assignment  *  *  * in conformity with the provisions of this title.'' No express limitation is made by the statute itself, nor do we think a limitation can be reasonably implied from the wording, to the effect that a valid assignment may not be made in conformity with the rules of the common law without compliance with the formalities in the statute prescribed. As is said in 5 C. J., at page 1173:

''The validity of assignments, except as otherwise provided by statute, is to be determined on principles of the common law, and a general assignment has frequently been held to operate as a common-law assignment, although not valid as a statutory assignment.''

In the case of *Lucy* v. *Freeman*, 93 Minn. 274, 101 N. W. 167, Brown, J., in commenting upon the questions there involved, and very similar to the case at bar, says:

''It is elementary that parties may make and enter into such contracts, bargains, and agreements as they may deem best for their interests, and neither the Legislature nor the courts have the power or right to restrict them in the exercise of that privilege, so long as their contracts are not immoral or tainted with positive illegality. In the case at bar Dittbenner was insolvent and unable to pay his debts, and to satisfy his creditors, or those who should participate in the transaction, he conveyed the property in question to plaintiff, as trustee, under the agreement of plaintiff to convert the same into money and pay and discharge Dittbenner's debts. The transaction amounted in effect to an assignment for the benefit of creditors; not an assignment under our insolvency statutes, or made in conformity with the statutory regulations of common-law assignments. but a common-law assignment pure and simple. The contention of defendant is that all such assignments, where the statutes regulating them are not complied with, are absolutely void, not only as to creditors and subsequent purchasers in good faith, but as between the parties themselves. Section 4227, Gen. St. 1894, provides that every conveyance or assignment made by a debtor of the whole or any part of his estate in trust to an assignee for the benefit of creditors shall be void unless  *  *  *  acknowledged,  *  *  *  and unless the same be filed in the office of the clerk of the district court.  *  *  *  The purpose of the statute was not to restrict

the rights of parties to contract on such terms and conditions as they might deem for their best interests. * * * The right to make a common-law assignment for the benefit of creditors exists independent of statutes.''

The assignment in question was a general assignment, without preference, of a stock of merchandise, fixtures, etc., for the benefit of all the creditors of the Regulator Company, of which no creditor or debtor, so far as the record here shows, complained or had any cause to complain; in fact, an assignment under which all the creditors of the assignor participated, and were to receive their just benefits alike without compliance with the provisions of the statute invoked by defendant, concerned only as a third party. In our opinion it was just as legal, binding, and effective, under the circumstances, upon all the parties to it, as if the statute in question had been complied with in every particular as to formalities, execution, and procedure under it. It is not our purpose nor do we wish to be understood as here deciding that in a proper case under the Utah statute creditors may not complain of the failure to comply with statutory formalities and procedure; but what we do now decide is that the case at bar presents in all its phases a valid assignment made by the Regulator Company to plaintiff, and more especially an assignment that may not be legally questioned by one occupying the position of the defendant in this action.

(2) The further contention is made by defendant that the several communications had by telegrams and letters between the plaintiff and the defendant did not constitute a legal contract. Again counsel for defendant in their brief have cited numerous authorities for the purpose of sustaining their contention that the letters and telegrams in question merely constituted negotiations for the purchase of the property held in trust by the plaintiff as assignee of the Regulator Company for the benefit of its creditors rather than an absolute contract to purchase. No good purpose would be subserved in entering upon a discussion here as to the applicability of the cases cited in defendant's brief to the case at bar. They are not in point.

Preliminary to the opinion we have set forth verbatim the written communications relied upon by the plaintiff as constituting the contract between it and the defendant. To our minds the primary elements of a contract, that of an offer and acceptance, are clearly disclosed by the written communications referred to. It is clearly shown that the plaintiff offered to sell the property to defendant for $8,500.00. Under date of May 24, 1912, defendant wired the plaintiff:

"I accept option given me up to today eight thousand five hundred dollars on Regulator Company proposition made me last Sunday."

The plaintiff replied by wire May 25:

"We accept your offer of eight thousand five hundred dollars for stock, fixtures and lease of Regulator Company. Advise when deal can be completed. The horse which with wagon and harness inventoried one hundred dollars accidentally killed. Will allow credit fifty dollars for same."

Defendant replied June 3d by wire:

"Manager Wahl closing inventory stock. * * * Will leave Wednesday for Salt Lake."

Then again defendant replied by letter, June 6th:

"My manager, Mr. Wahl, left here yesterday for your city and will arrive there Sunday. * * * He will look over the stock and receive the inventory and keys thereto, and if all is as was represented he will turn over to you check for $8,450.00, the purchase price being $8,500.00 less $50.00 deduction for horse."

Thereafter the testimony shows that Mr. Wahl duly arrived in Salt Lake City, and, accompanied by plaintiff, proceeded to Richfield, and there defendant refused to accept or pay for the property.

It is contended by counsel for defendant that the acceptance of the plaintiff's offer to sell for $8,500, less $50, the value of the horse, was conditioned on the part of the defendant, the condition being "if as represented." There is nothing in that contention; for, as a matter of law, it would be implied in any case that acceptance is based upon the condition "if as represented." There is nothing in the record here

to show otherwise than that everything concerning the transaction and the property was just exactly as represented. Further, the record shows that the defendant personally acquainted himself while in Salt Lake City with the character and the inventory of the property, and all the conditions and purposes surrounding the selling and disposing of it by the plaintiff. If after accepting plaintiff's offer to sell on further investigation, the defendant found the property to be otherwise than as represented to him by the plaintiff, he well might have had just and legal cause to refuse to accept and pay for it; but no such contention is made, nor can be made on the record before us. The record here does not disclose but that the property was in every particular as represented and as defendant understood it to be when he accepted plaintiff's offer to sell.

Such transactions as are involved in this case are but the common, ordinary, and everyday transactions of commercial life, and should not be complained of nor repudiated by either party when not attended with fraud or unfair dealing.

The judgment of the district court, in our opinion, both as to the facts and the law of this case, is amply sustained by the record and must be affirmed. It is so ordered. Costs to plaintiff.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.

<hr>

